# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THON NGOT SANG,<br><br>            Plaintiff,<br><br>     v.<br><br>R. BAKER, et al.,<br><br>            Defendants. | CASE NO. 1:06-cv-01496-AWI-YNP PC<br><br>ORDER DISMISSING COMPLAINT, WITH LEAVE TO FILE AMENDED COMPLAINT WITHIN 30 DAYS<br><br>(Doc. 50) |

     Plaintiff Thon Ngot Sang ("Plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California ("CSATF-CSP") at the time of the events described in his complaint. Plaintiff is suing under section 1983 for the violation of his rights under the Eighth Amendment. Plaintiff names R. E. Baker (chief dental officer), A.K. Scribner (warden), T.P. Wan (associate warden), P. McGuinnes (chief medical officer), G. Martinez (correctional health administrator II), Dr. Nguyen (physician), Dela Rosa (registered nurse), Tanner (registered nurse), James A. S. (registered nurse), and multiple Doe's as defendants. For the reasons set forth below, the Court finds that Plaintiff's second amended complaint fails to state any cognizable claims upon which relief may be granted under section 1983. Plaintiff's second amended complaint will be dismissed with leave to file a third amended complaint within 30 days.

///

///

**I.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.   Background**

    **A.    Procedural Background**

Plaintiff filed the original complaint in this action on October 5, 2006. (Doc. #1.) The Court found that Plaintiff's original complaint stated a cognizable claim against R. Baker. The Court

///

1  ordered the U.S. Marshal to serve Baker with a copy of Plaintiff's complaint on May 14, 2008.
2  (Doc. #18.)  Baker submitted a waiver of service on July 11, 2008.  (Doc. #31.)
3        On June 30, 2008, Plaintiff filed a motion requesting leave to file an amended complaint.
4  (Doc. #26.)  On August 25, 2008, Plaintiff filed another motion requesting to amend his complaint.
5  (Doc. #36.)  Plaintiff's motion was granted on September 3, 2008.  (Doc. #40.)  Plaintiff filed his
6  first amended complaint on September 29, 2008.  (Doc. #41.)  On January 26, 2009, Plaintiff filed
7  another motion to amend his complaint.  (Doc. #44.)  The Court granted Plaintiff's motion on May
8  1, 2009.  (Doc. #49.)  Plaintiff filed his second amended complaint on June 4, 2009.  (Doc. #50.)
9  This action proceeds on Plaintiff's second amended complaint.

10      **B.**    **Factual Background**

11        Plaintiff claims that Defendants failed to provide Plaintiff with adequate medical care.  On
12  January 7, 2006, Plaintiff was attacked by two other inmates in the prison yard.  Officers responded
13  to the incident, and Plaintiff was struck with an officer's baton in the lower jaw.
14        Only two medical personnel (MTA Jane Doe and Defendant James A. S.) were available
15  because the incident occurred late Saturday afternoon.  Defendant Tanner stated that he would send
16  an order for Motrin.  However, Plaintiff never received any pain medication.  Plaintiff was only
17  given an ice pack and gauze for the bleeding.  Plaintiff also claims he as given "a liquid placebo
18  solution" that did nothing to alleviate the pain.
19        Plaintiff was unable to eat dinner that night as a result of the pain.  Plaintiff felt a sharp pain
20  on the right side of his jaw.  Plaintiff reached in his mouth and pulled out a "broken piece of molar."
21  Plaintiff requested pain medication and complained that he was unable to eat but his requests for
22  treatment were denied.
23        Plaintiff claims that "review of recorded phone statements" revealed that Defendant Dela
24  Rosa contacted a doctor, Defendant Nguyen, and scheduled Plaintiff to be seen in the morning.
25  Plaintiff complains that he should have been given immediate emergency treatment.
26        Some time later, Plaintiff was escorted from his cell and placed in administrative segregation.
27  Plaintiff was not seen by medical personnel or given treatment for the next two days, despite making
28  numerous pleas for attention.  Plaintiff was taken to the Correctional Treatment Center ("CTC") on

Tuesday, three days after the incident. Plaintiff was seen by Defendant R. E. Baker, chief oral surgeon. Baker ordered x-rays and noted a "greenstick fracture to the right upper mid mandible jaw area, chipped upper right rear molar, and wide visible splitting gap between the lower left teeth area which included also frontal and back gum lacerations slanting vertically downwards." Plaintiff was told that his injuries were not sufficiently serious to warrant prescribing treatment and medication and that Plaintiff would be referred to the prison yard's dentist for repair. When Plaintiff complained about being unable to eat, Baker said "you'll eat when hungry enough."

On January 11, 2006, Plaintiff was seen by a committee consisting of numerous prison officials, none of which are named as defendants. Plaintiff complained about the lack of care and his desperate need for medical treatment, but the committee ignored Plaintiff's complaints.

Plaintiff did not receive his scheduled appointment with the prison yard's dentist until January 18, 2006, eight days after being scheduled by Defendant Baker. During the appointment, Plaintiff received more x-rays. Plaintiff was told that an extraction for his upper right rear chipped molar was not possible until Plaintiff could open his jaw wide enough without pain. Plaintiff was given ibuprofen and a referral back to Defendant Baker.

On January 20, 2006, Plaintiff was brought to Defendant Nguyen in response to Plaintiff's complaints about not being able to eat. The pain had gotten much worse in the past few days, making it difficult for Plaintiff to talk. Plaintiff's garbled speech was deciphered by a correctional officer. Nguyen asked why Plaintiff had not been treated yet, and Plaintiff reported that Baker did not believe that the pain and injury was serious enough. Nguyen examined Plaintiff and prescribed more pain medication and a liquid diet. Plaintiff was given another referral back to Defendant Baker. However, Plaintiff was never given a liquid diet despite Plaintiff's repeated requests to unidentified administrative segregation officials.

On January 25, 2006, Plaintiff was escorted to see Defendant Baker. Plaintiff complains that he was treated with "contempt and disregard." Plaintiff requested for more thorough treatment but Baker responded by asking Plaintiff whether he had ever studied medicine or possessed any type of degree. Plaintiff said that he did not and Baker told Plaintiff to "go back to your cell and write a book on it." Plaintiff complained about not receiving a liquid diet, and Baker placed a call for the

order, but Plaintiff still did not receive a liquid diet. Plaintiff was told later by a MTA or RN that liquid diets are only served within the infirmary. Plaintiff claims that her statements "thus made it clear that why one particular MTA nurse whom did chance the risk once to provide Plaintiff with a single serving was likely reprimanded and thus never attempted to do so again."

Plaintiff claims that the physicians and doctors prescribed a liquid diet for Plaintiff, but when the liquid food arrived, it was "undoubtedly being interferred[sic] and purposefully denied by [CSATF-CSP's] medical staff members." Plaintiff claims that Defendants A.K. Scribner, T.P. Wan, P. McGuinnes, and G. Martinez implemented the policy of not allowing liquid diets to be distributed to prisoners outside the infirmary.

On February 6, 2006, Plaintiff was escorted to see Defendant Baker. Baker was not there that day and another woman took x-rays of Plaintiff's jaw. The woman told Plaintiff that she was not authorized to evaluate the x-rays and that the x-rays would be given to the regular dental care providers for evaluation. On February 8, 2006, Plaintiff was taken to the dental care center. Doctor Fishback told Plaintiff "that they 'don't fix jaws only teeth . . .'" Plaintiff was also told that it was the chief oral surgeon's responsibility to provide such treatment.

Plaintiff claims that he never received treatment for his jaw injuries while at CSATF-CSP. On February 22, 2006, Plaintiff was transferred to Pelican Bay State Prison. Shortly after the transfer, Plaintiff was seen for a dental examination. Plaintiff was told that "because the jaw had began to heal without treatment . . . dental staff[] determined that they could do nothing about the injury." Plaintiff claims that because he did not receive treatment, his "jaw has healed wrong" and he "continues to suffer in pain and discomfort." Plaintiff claims that "due also to sustained infection, an abstraction was performed on April 21, 2008 to one of the teeth belonging to lower[sic] left injured jaw area."

**III.    Discussion**

      **A.    Legal Standards for Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

Plaintiff claims that Defendants acted with deliberate indifference toward his serious medical needs, violating his rights under the Eighth Amendment. The Eighth Amendment prohibits the

5

imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id. However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

### B.   Claims Against Defendant R. E. Baker

Plaintiff claims that Defendant R. E. Baker exhibited deliberate indifference toward Plaintiff's serious medical needs. Baker was the chief dental officer and oral surgeon at CSATF-CSP. Plaintiff was seen by Baker on two separate occasions. Three days after suffering the injury to his jaw, Baker, x-rayed Plaintiff's jaw, diagnosed Plaintiff's injury, and told Plaintiff that the injury was not serious enough to warrant any further treatment or medication beyond being referred to the prison yard dentist for repair. Baker dismissed Plaintiff's complaints about being unable to eat by telling Plaintiff that Plaintiff would eat when he was hungry enough. Plaintiff saw Baker again a few weeks later. Baker denied Plaintiff's request for more thorough treatment and treated Plaintiff with "contempt and disregard." Baker ordered a liquid diet for Plaintiff after Plaintiff complained about being unable to eat for the second time.

Plaintiff fails to state a claim against Defendant Baker. Plaintiff's conclusion that Baker acted with deliberate indifference is not supported by the facts alleged. Plaintiff fails to specifically identify how the treatment provided by Baker was deficient. Baker examined Plaintiff and concluded that Plaintiff did not require any further treatment. Plaintiff disagreed with Baker's assessment but fails to specify what further treatment he should have received. Plaintiff's blank conclusion that he should have received some unidentified treatment or surgery that would have minimized the pain and effects of his jaw injury is not sufficient to support a cognizable claim. In order state a claim under the Eighth Amendment, Plaintiff must allege that Baker purposefully withheld some form of treatment from Plaintiff with deliberate disregard to a serious risk of further injury or the unnecessary and wanton infliction of pain. Baker did not act with deliberate indifference if the failure to provide treatment resulted from a negligent mis-diagnosis, or from being unaware that a more effective treatment was available. Even if Baker's diagnosis was erroneous,

///

Plaintiff fails to allege facts that plausibly suggest that Baker deliberately made an erroneous diagnoses for the purpose of causing Plaintiff further pain or injury.

Finally, the facts alleged by Plaintiff demonstrate that Baker was not responsible for the fact that Plaintiff did not receive a liquid diet. During Plaintiff's first visit, Baker concluded that Plaintiff did not need a liquid diet. Baker's conclusion, even if erroneous, does not rise to the level of deliberate indifference. During Plaintiff's second visit, Baker ordered a liquid diet for Plaintiff. Although Plaintiff never received the liquid diet, Plaintiff does not allege that it was not by any fault of Baker. Plaintiff fails to state any cognizable claims against Defendant Baker.

    **C.**    **Claims Against Defendants A.K. Scribner, T.P. Wan, P. McGuinnes, and G. Martinez**

Plaintiff claims that Defendants A.K. Scribner, T.P. Wan, P. McGuinnes, and G. Martinez violated Plaintiff's rights under the Eighth Amendment by implementing a policy that prevented inmates outside of the infirmary from receiving liquid diets. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff fails to state any cognizable claims against Defendants Scribner, Wan, McGuinnes, or Martinez. Plaintiff attempts to hold Defendants liable for implementing a policy so deficient that the policy itself is a repudiation of constitutional rights and was the moving force of the constitutional violation. Plaintiff offers no facts that support the conclusion that the policy of only

8

1  providing liquid diets to inmates in the infirmary was "so deficient that the policy itself is a
2  repudiation of constitutional rights." Nor could it be said that the policy was "the moving force of
3  the constitutional violation." There is nothing obviously malicious or reprehensible about a prison
4  policy that provides that liquid diets are only provided for inmates in the infirmary. Plaintiff alleges
5  no facts that suggest that Scribner, Wan, McGuinnes, or Martinez implemented the policy with
6  actual awareness of and deliberate indifference toward the risk that it would result in Plaintiff being
7  unable to receive a liquid diet and suffer pain and weakness from malnutrition. Plaintiff fails to state
8  any cognizable claims against Defendants Scribner, Wan, McGuinnes, or Martinez.

9        **D.**     **Claims Against Defendant Dr. Nguyen**

10       Plaintiff alleges that Defendant Dr. Nguyen was contacted to see Plaintiff the morning after
11  his injury. Plaintiff alleges that he was not seen by Nguyen the day after his injury, but Plaintiff does
12  not allege that it was due to any action or inaction by Nguyen. Plaintiff also alleges that Nguyen saw
13  Plaintiff on January 20, 2006. Nguyen examined Plaintiff, provided pain medication, ordered a
14  liquid diet, and referred Plaintiff back to Defendant Baker.

15       Plaintiff has not alleged any facts that suggest that Nguyen was deliberately indifferent
16  toward Plaintiff's medical needs. Nguyen diagnosed and treated Plaintiff. Plaintiff offers no
17  explanation as to how Nguyen's diagnosis or treatment was deficient, and there is no suggestion that
18  any deficiency resulted from Nguyen's conscious disregard toward a risk of serious injury or
19  unnecessary pain. Plaintiff fails to state any cognizable claims against Defendant Nguyen.

20        **E.**     **Claims Against Defendant Dela Rosa**

21       Plaintiff claims that Defendant Dela Rosa contacted a doctor, Defendant Nguyen, the same
22  day Plaintiff injured his jaw and scheduled Plaintiff to be seen in the morning. Plaintiff complains
23  that he never saw Nguyen the next morning, but there is no suggestion that the failure to be seen was
24  caused by Dela Rosa. Plaintiff also complains that he should have been seen immediately because
25  his condition was an emergency. However, Plaintiff alleges no facts that suggest that Dela Rosa
26  knew that Plaintiff needed emergency treatment but purposefully delayed treatment in deliberate
27  disregard to a serious risk of further injury or unnecessary pain. Plaintiff does not claim that Dela
28  Rosa actually saw Plaintiff and diagnosed his condition as an emergency, nor does Plaintiff provide

any other explanation as to how Dela Rosa would have known that Plaintiff needed emergency treatment immediately. Plaintiff fails to allege any cognizable claims against Defendant Dela Rosa.

### F. Claims Against Defendant Tanner

Plaintiff's only allegation against Defendant Tanner is that he stated that "he would send an order over for Motrin." Plaintiff did not receive the motrin. Plaintiff does not explain why he did not receive the Motrin and there is no suggestion that Tanner did anything prevented Plaintiff from receiving the Motrin. Nor is there any suggestion that Tanner acted or failed to act with deliberate disregard to a known risk to Plaintiff's health. Plaintiff fails to state any cognizable claims against Defendant Tanner.

### G. Claims Against Defendant James A.S.

Plaintiff's only allegation against Defendant James A.S. is that he was one of only two medical personnel available the afternoon that Plaintiff suffered his jaw injury. Plaintiff does not make any other allegations as to what James A.S. did or failed to do that caused Plaintiff to suffer further injury or unnecessary pain. Plaintiff fails to state any cognizable claims against Defendant James A.S.

### H. Claims Against Does

Plaintiff asserts claims against various Doe Defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, in situations where the identity of the alleged defendants will not be known prior to the filing of a complaint, a plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. Id. (citing Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978)).

While Plaintiff's use of the "Doe" moniker to sue unidentified prison officials is permissible, Plaintiff's ambiguous use of the fictitious name is improper. Regardless of whether the identity of a particular prison official is known or not, Plaintiff is still obligated to allege facts that demonstrate a causal link between that unidentified official's actions and an alleged constitutional violation. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be

individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation"). Thus, Plaintiff must make individualized allegations about each "Doe" defendant. Plaintiff may not refer to a single ambiguous set of multiple "Doe" defendants. Plaintiff appears to use fictitious names to refer to a hypothetical set of individuals who may or may not be liable for actions they may or may not have done that may or may not have resulted in the violation of Plaintiff's constitutional rights.[1]

For example, Plaintiff claims that unidentified RNs and MTAs were "undoubtedly" and "purposefully" withholding Plaintiff's liquid meals. Plaintiff makes this inference based on a nurse's statement that liquid diets are only served within the infirmary. Plaintiff also infers that a nurse "did chance the risk once to provide Plaintiff with a single serving [but] was likely reprimanded and thus never attempted to do so again." Plaintiff's inferences about the conduct of these unidentified prison officials appears to be speculative. Nothing from the nurse's statement implies that unidentified RNs and MTAs were purposefully withholding meals from Plaintiff. Nor is it clear how Plaintiff inferred from the nurse's "revelatory statement" that a lone registered nurse was reprimanded for attempting to provide a single serving to Plaintiff. Plaintiff does not allege that the "revelatory statement" contained any reference to any nurse trying to provide Plaintiff with liquid food or any nurse being reprimanded.

In order to sue a defendant using a fictitious name, Plaintiff is advised that he is still obligated to allege facts against each <u>individual</u> unidentified defendant that demonstrates exactly what that individual did and what that individual's subjective state of mind was. This can be done by referring to each individual unidentified defendant by a separate fictitious name, such as "John Doe #1," "John Doe #2," and so on. Plaintiff may not sue Doe defendants collectively based on speculative beliefs as to whether they exist, or hypothetical allegations of what they may have done that violated Plaintiff's constitutional rights.

---

[1] For example, Plaintiff refers to "Doe[s] SATF CSP's high ranking official[s] (any and all 1-5 inclusive) . . . (includes health directors and administrators)" and "Does SATF CSP's registered nurses[s] (1-6 inclusive)" and "Doe[s] SATF CSP's medical technical assistant[s] (1-6 inclusive)." Plaintiff's use of "any and all 1-5 inclusive" implies Plaintiff does not know how many Doe defendants exist. If Plaintiff is unsure of how many exist, it raises questions about the basis of Plaintiff's factual allegations against them and the plausibility of Plaintiff's conclusions that they acted with deliberate indifference.

11

## IV. Conclusion and Order

The Court has screened Plaintiff's second amended complaint and finds that it does not state any claims upon which relief may be granted under section 1983. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff is cautioned that he may not add unrelated claims involving different defendants in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

However, although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations'", "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing

1  London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at
2  1474.  In other words, even the claims that were properly stated in the original complaint must be
3  completely stated again in the amended complaint.
4    Accordingly, based on the foregoing, it is HEREBY ORDERED that:
5    1. Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;
6    2. The Clerk's Office shall send Plaintiff a complaint form;
7    3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an
8     amended complaint;
9    4. Plaintiff may not add any new, unrelated claims to this action via his amended
10    complaint and any attempt to do so will result in an order striking the amended
11    complaint; and
12   5. If Plaintiff fails to file an amended complaint, the Court will recommend that this
13    action be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

**Dated:** **April 12, 2010**    /s/ Sandra M. Snyder
              UNITED STATES MAGISTRATE JUDGE